# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

## ELKINS DIVISION

BITUMINOUS CASUALTY CORPORATION,

    Plaintiff,

v.                            CIVIL ACTION NO. 2:04-cv-00088

MIKE ROSS, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the plaintiff's motion for summary judgment [Docket 23] and the defendant's motion for summary judgment [Docket 25]. For the reasons explained herein, the court **DENIES** each motion.

### I.

Michael McCartney was burning brush for Mike Ross, Inc.[1]—the defendant—on February 15, 2002, at a farm on Brushy Fork Road in Upshur County, West Virginia. The fire escaped containment into an open field as a result of high winds. Mr. McCartney allegedly sustained injuries to his lungs while attempting to control the fire. He filed suit against the defendant and Ross & Wharton Gas Co. in Upshur County Circuit Court on January 23, 2004.

---

[1] Mike Ross is the principal of Mike Ross, Inc., and is a principal of Ross & Wharton Gas Co.

Mike Ross immediately contacted Bituminous Casualty Corp.—the plaintiff—to ask Bituminous to defend the suit and indemnify Mike Ross, Inc., and Ross & Wharton Gas Co. for any losses. Bituminous agreed to defend Ross & Wharton but declined to defend or indemnify Mike Ross, Inc. The state court dismissed the suit against Mike Ross, Inc., on January 26, 2005, after Mr. McCartney and Mike Ross settled.

On November 19, 2004, before Mike Ross settled Mr. McCartney's claim, Bituminous Casualty Corp. filed the pending action. Bituminous asks the court for a declaratory judgment finding that Bituminous did not have a duty to defend or indemnify Mike Ross, Inc., in Mr. McCartney's underlying lawsuit because Bituminous's insurance policy does not provide coverage for this situation.

II.

Bituminous insured Mike Ross, Inc. at the time of Mr. McCartney's accident with a general commercial liability policy and a commercial umbrella policy.[2] The policy excludes coverage for an insured's employee's "bodily injury" arising in the course of employment. The policy defines "employee" by specifying, "'Employee' includes a 'leased worker.' 'Employee' does not include a 'temporary worker.'" According to the policy, a leased worker "means a person leased to [the insured] by a labor leasing firm under an agreement between [the insured] and the labor leasing firm, to perform duties related to the conduct of [the insured's] business." The policy explicitly states that this definition of "leased worker" does not encompass a "temporary worker." The policy defines a

---

[2] For the purposes of this opinion, the two policies are referred to collectively as "the policy."

"temporary worker" as a "person who is furnished to [the insured] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." The policy, however, does not define the phrases "furnished to," "seasonal," or "short-term workload conditions."

Because Mr. McCartney's bodily injury occurred during his employment with Mike Ross, Inc., Bituminous does not have a duty to defend or indemnify if Mr. McCartney was an "employee" as defined by the policy. Based on the policy's definitions, Mr. McCartney was an "employee" if he was not a "temporary worker." Therefore, this case hinges on whether Mr. McCartney was a temporary worker for Mike Ross, Inc., on February 15, 2002.

Bituminous asserts it is entitled to summary judgment because the facts require the court to find that Mr. McCartney was not a temporary worker. The plaintiff points to the following facts as evidence that Mr. McCartney's employment was not temporary: Mr. McCartney completed weekly time cards for the defendant; he occasionally received pay for "time-and-a-half" when working more than forty hours in a week; he was provided with supplies and tools by the defendant; and he could purchase supplies on the defendant's charge account at a local store. (Pl.'s Mem. Supp. Mot. for Summ. J. 3–5.) Bituminous notes that Mr. McCartney worked for the defendant for approximately six months—from July 2, 2001, through February 15, 2002. (*Id.* at 3.) Bituminous also argues that the court cannot consider Mr. McCartney a temporary worker because he received workers compensation benefits by using a form in which Mr. Ross recognized him as a "part-time employee" that worked forty hours a week. (*Id.* at 5.) The plaintiff contends that because Mr. Ross admits that Mr. McCartney was not a substitute for another employee on leave and that he was not secured through a temporary employment agency, Mr. McCartney was not a temporary worker. (*Id.* at 6.)

On the other hand, Mike Ross, Inc., asserts it is entitled to summary judgment because the facts require a finding that Mr. McCartney was a temporary worker. The defendant claims that Roland Bogert[3] approached Mr. Ross and asked him to try and get Mr. McCartney a job at the French Creek Game Farm. According to the defendant, although Mr. Ross was unable to secure employment for Mr. McCartney at the Game Farm, Mr. Ross had a need in his own business for someone "to work performing seasonal tasks." (Def.'s Mem. Supp. Mot. for Summ. J. 9.) Mr. Ross asserts that while Mr. McCartney was working for him, he continually tried to secure employment for Mr. McCartney at the Game Farm. (*Id.* at 2.) Mr. Ross admits he offered Mr. McCartney permanent employment, but asserts Mr. McCartney refused the offer. (*Id.*) As evidence of Mr. McCartney's temporary status,[4] the defendant points to the fact that no payroll taxes were withheld from his pay like permanent employees, he was not included in the business's health insurance program, and he was not counted as an employee for the purposes of unemployment, workers compensation, or social security. (*Id.*) The defendant asserts it issued Mr. McCartney a 1099 Form for taxes instead of the traditional W-2 Form given to employees and that no personnel file was kept for him. (*Id.*) Mr. Ross characterized the employment as "casual" in the sense that Mr. McCartney reported on a day-by-day basis to see if any work was available. (*Id.*)

---

[3] The names Roland Bogert and Rolland Bolder appear multiple times in the defendant's pleadings. Although possibly mistaken, the court believes that the defendant is referring to the same person and will use the name Roland Bogert in this opinion, as that name appears most prominently.

[4] In the defendant's brief, the defendant states, "The synonym for temporary is permanent." (Def.'s Mem. Supp. Mot. for Summ. J. 9.) The court assumes that the defendant actually meant that permanent is the *antonym* of temporary.

Even before proceeding with the customary summary judgment analysis, it is obvious based on a cursory review of the case that many factual issues necessary to determine the true nature of Mr. McCartney's employment are in dispute. Nonetheless, the court proceeds with the customary analysis to determine if these factual disputes are material and whether either party is entitled to judgment as a matter of law.

### III.

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

In this case, both parties have moved for summary judgment. When considering the evidence presented on each motion in the light most favorable to the nonmoving party, the court **FINDS** that the nonmoving party to each motion has satisfied its burden of proof. Accordingly, the court **DENIES** both motions for summary judgment.

IV.

A.

When confronted with the interpretation of an insurance contract, the court must first determine whether the provision at issue is ambiguous. *See Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488, 495 (W. Va. 1987) (noting that a finding of ambiguity is a threshold matter for the court to consider). Determining whether an insurance provision is ambiguous is a question of law for the court. If the court finds that the provision at issue—here, the policy's definition of "temporary worker"—is unambiguous, then the court may, as a matter of law, apply it to the facts of record. *See Transamerica Ins. Co. v. Arbogast*, 662 F. Supp. 164, 168 (N.D. W. Va. 1987) (explaining that in West Virginia, unambiguous insurance provisions are to be "applied," not "construed" by courts). To determine whether a particular provision in an insurance policy is ambiguous, the policy must be considered as a whole. *See Soliva v. Shand, Morahan & Co.*, 345 S.E.2d 33, 35 (W. Va. 1986) (stating that provisions should not be taken out of context). In West Virginia, courts "should read policy provisions to avoid ambiguities and not torture the language to create them." *Canal Ins. Co. v. Blankenship*, 129 F. Supp. 2d 950, 953 (S.D. W. Va. 2001) (quoting *Payne v. Weston*, 466 S.E.2d 161, 167 (W. Va. 1995)).

The language of a provision is ambiguous when it is reasonably susceptible to two different meanings. *Riffe v. Home Finders Assocs.*, 517 S.E.2d 313, 318 (W. Va. 1999). If the court finds that a provision is ambiguous, the provision will be strictly construed against the insurer. *Murray v. State Farm Fire and Cas. Co.*, 509 S.E.2d 1, 6–7 (W. Va. 1998). Once the provision is found to be ambiguous as a matter of law, a question of fact arises to determine the objectively reasonable expectations of the parties. *Payne*, 466 S.E.2d at 166; *see also Nat'l Mut. Ins. Co.*, 356 S.E.2d at 495 (the expectations of the parties will be "honored even though painstaking study of the policy provisions would have negated those expectations").

B.

As stated above, the Bituminous policy defines the term "temporary worker" as "a person who is furnished to [the insured] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." When considering this provision in light of the rest of the policy, the court **FINDS** this provision ambiguous.

The phrase "furnished to" is not defined by the policy and is reasonably susceptible to multiple meanings. To qualify under this definition, does the worker have to be "furnished" by a temporary employment agency? Or can another individual "furnish" a person to the insured merely by recommending him? The policy's only help in answering these questions is found in its definition of "leased worker," which means a worker who is "leased" to the insured by a labor-leasing firm pursuant to a contract. The policy's contemplation of workers being leased under contract in defining another kind of worker lends support for the finding that "furnished to" in the context of a "temporary worker" does not necessarily mean "furnished to" by a temporary

employment agency. If "furnished to" required a temporary employment agency's placement, the policy should read accordingly. The policy's use of the phrase, however, also could reasonably mean the furnishment of a worker by any third party, which the defendant contends is the case. Based upon the words of the insurance policy alone, it is impossible for the court to determine what is meant by the phrase "furnished to."

In addition, no definition exists in the policy for the phrase "short-term workload conditions." Does this phrase mean a worker can work only one hour to be considered "temporary?" Five hours? Ten hours? One day? Ten days? Four months? Six months? One year? This question is impossible to answer based on the language in the policy.

The policy's definition also is unclear as to whether a person must be "furnished to" the insured to meet seasonal demands or short-term conditions to be a temporary worker *or* whether a person can meet the definition merely by being hired to meet seasonal demands or short-term conditions. In other words, does "furnished to" modify both parts of the definition or just the first part. In analyzing this exact definition of "temporary worker," a Connecticut court held that "furnished to" modified both parts and that a person could never be a "temporary worker" if the person was not "furnished to" the insured. *Nationwide Mut. Ins. Co. v. Allen*, 850 A.2d 1047, 1057 (Conn. App. Ct. 2004). The Connecticut Appellate Court stated that the definition would not make grammatical sense if the phrase "furnished to" only modified the first part; this court, however, disagrees as the definition's second-part can make grammatical sense when the words "furnished to" are discarded. In that case, a temporary worker would be 1) a person furnished to the insured to substitute for a permanent employee for leave or 2) a person to meet seasonal demands and short-term workload conditions.

The U.S. District Court for the Western District of Kentucky also found this definition ambiguous. *Ayers v. C & D Gen. Contrs.*, 237 F. Supp. 2d 764, 768–69 (W.D. Ky. 2002). The court explained that this definition was an example of "less than perfect draftsmanship," an assertion with which this court certainly agrees. *See id.* at 769 (arguing that the poor wording "complicates" the court's task). In that case, the court found that the insurance company placed too much weight on the phrase "furnished to [the insured]." *Id.* The court explained that the definition's purpose was clear: "If an employee is hired to fill-in for a permanent employee on leave or to meet a short-term need, the [] policy classifies that employee as a 'temporary worker' and thus exempt from the coverage's exclusion for bodily injuries to an 'employee.'" *Id.* The purpose of the definition in this case is no different.

The ambiguities in the policy's definition of "temporary worker" create a question of fact as to the objectively reasonable expectations of the parties when the insurance contract was entered into. Once these expectations are determined at trial, the factfinder can decide whether Mr. McCartney's situation falls within the boundaries of those expectations for insurance coverage.

V.

Although both parties provided enough evidence on their respective summary judgment motions to shift the burden to the nonmoving party, the nonmoving party for each motion met its burden of pointing to enough evidence in the record to establish genuine issues of material fact. Neither party is entitled to judgment as a matter of law. Accordingly, the court **DENIES** the plaintiff's motion for summary judgment and **DENIES** the defendant's motion for summary judgment.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 6, 2006

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE